FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JAN 16 2009

GREGORY C. LANGHAM

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 07-cv-02684-RPM

WESTERN ENERGY RESOURCES, INC.,

        Plaintiff,

v.

DIRK KEMPTHORNE,
in his capacity as Secretary of the Interior of the United States of America, and
UNITED STATES DEPARTMENT OF THE INTERIOR,
an agency of the United States government,

        Defendants.

---

## ORDER AFFIRMING DECISION

---

The decision under judicial review pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701-706, is the decision of the Interior Board of Land Appeals ("IBLA") denominated IBLA 2007-248, a copy of which is attached as Exhibit 1. That decision affirmed the decision of the Colorado State Office, Bureau of Land Management ("BLM"), denying Western Energy Resources, Inc.'s ("WER") petition for reinstatement of two oil and gas leases which were terminated by operation of law for the failure to pay the annual rentals due on June 1, 2002. Late payments were received by the Minerals Management Service ("MMS") office in Colorado on June 11, 2002, by checks dated June 6, 2002. The 2003 rental payments were received timely and were accepted.

In December, 2003, an MMS employee asked the plaintiff for evidence of the 2002 payment on one of the leases and, when it was provided, informed WER that the

BLM may take issue with timeliness of the payment.

On February 6, 2004, WER filed a petition for Class I reinstatement of the two leases under 30 U.S.C. § 188(c) which authorized such reinstatement if the lessee establishes that the failure to pay timely was justifiable or not due to a lack of reasonable diligence. The BLM denied the Class I petition on February 11, 2004, finding that WER's statement that the late payments were the result of "unanticipated computer errors" was insufficient. That decision was appealed to the Board.

In addition to claiming that its failure to make timely payments was justifiable, WER claimed that it should be entitled to a Class II reinstatement under § 188(d)(2) because it had never received notice of termination and should not be restricted by the 15 month limitation on such an application as suggested by the BLM's decision denying its Class I petition.

While the appeal was pending, Congress enacted the Energy Policy Act of 2005, effective August 8, 2005. It granted authority to reinstate, under Class II provisions, leases that were terminated by operation of law and could not be reinstated because of the 15 month limitation. That authority was limited to the time period between August 8, 2005, and December 6, 2005. Pub.L. No. 109-58, § 371.

MMS nationwide had problems with its automated, internet-based financial system from October, 2001, to August, 2003, making it unable to identify leases that had terminated for late or insufficient payment of annual rentals. It regained that ability in September, 2003. There was then a backlog of termination notices. It was that situation that Congress sought to remedy by enactment of Section 371 of the Energy Policy Act.

2

Although the statute did not require the BLM to take any initiative to implement this remedial legislation, the BLM issued an Instruction Memorandum ("IM") on October 21, 2005, directing the state BLM offices to give written notice informing any former lessee whose lease had terminated during the period from September 1, 2001, to June 30, 2004, and had stated an interest in reinstatement of the lease, that it had the opportunity to petition for reinstatement under this provision by filing a completed petition by December 6, 2005. The petition must meet the conditions for a Class II reinstatement required by § 188(e). The Colorado BLM office did not send such a notice to WER and it did not file a Class II reinstatement petition before the December 6, 2005, deadline.

On September 22, 2006, the IBLA set aside the BLM's February 11, 2004, decision, and remanded the matter with directions to consider certain facts WER had raised and to meet and discuss Class II reinstatement under the Energy Policy Act.

The BLM on June 25, 2007, issued its new decision, again finding that WER was not entitled to a Class I reinstatement because it had not shown reasonable diligence for its late mailing of the rental payments and concluding that it had no statutory authority to grant a Class II reinstatement because WER had not filed a complete petition before December 6, 2005. That decision was affirmed by the IBLA decision now under review, for the reasons stated in it.

The plaintiff argues that the decision must be reversed as arbitrary and capricious because WER was deprived of its opportunity to remedy its late payments due to a lack of notice of the opportunity to petition for a Class II reinstatement under Section 371 within the 120 day period provided. The plaintiff claims it had no

3

knowledge of this remedial legislation before the time expired on December 6, 2005. These failures to give notice were the fault of the BLM and WER contends it is unfair to deny reinstatement because of these administrative failures.

The failures begin with WER's own administrative problem in its computer program resulting in the late payments. There is no prejudice resulting from the lack of notice of termination because WER did submit a timely petition for a Class I reinstatement. The BLM's denial of that petition for the failure of WER to justify its late payments was well within the discretionary authority of the agency and the plaintiff has not argued to the contrary.

The thrust of this case is the failure of the Colorado BLM office to comply with directions of the IM, which the IBLA called "inexplicable." The Secretary correctly observes that Congress did not require that a notice be given and the direction given in the IM was an internal policy directive. It is also correct that the plaintiff must be charged with constructive notice of the enactment of this remedial legislation. The ultimate legal conclusion, that after December 6, 2005, the BLM had no authority to reinstate these two leases that terminated on June 2, 2002, is correct.

The plaintiff contends that other BLM offices have reinstated leases under the Energy Policy Act with incomplete petitions and it has attached exhibits to demonstrate that assertion. The defendant moved to strike those exhibits as introducing evidence outside the administrative record, contrary to the APA. That motion is denied. The plaintiff's argument that this court should reverse the IBLA decision because of the purported different approaches of other BLM offices is without merit. The exhibits will

4

be added to the record in this case solely to complete the record if there is any appellate review.

The only basis on which this court could grant the relief requested in this case is that the legal conclusion that the BLM did not have statutory authority to reinstate these two leases is an error of law. To the contrary, it is a correct application of the law. The IBLA decision is affirmed for all of the reasons given in it. It is

ORDERED that the decision is affirmed and this civil action is dismissed.

DATED: January 16, 2009

BY THE COURT:

Richard P. Matsch, Senior Judge



# United States Department of the Interior

OFFICE OF HEARINGS AND APPEALS
Interior Board of Land Appeals
801 N. Quincy St. Suite 300
Arlington, VA 22203

703 235 3750                                   703 235 8349 (fax)

WESTERN ENERGY RESOURCES, INC.

IBLA 2007-248                                   Decided October 2, 2007

Appeal from a decision of the Colorado State Office, Bureau of Land Management, denying a petition for Class I reinstatement of two oil and gas leases, COC-64751 and COC-64752.

Affirmed; petition for stay denied as moot.

1. Oil and Gas Leases: Reinstatement--Oil and Gas Leases: Termination

   A petition for Class I reinstatement of an oil and gas lease that has terminated automatically by operation of law is properly denied when the lessee fails to show that the failure to pay on or before the anniversary date was justified or not due to a lack of reasonable diligence. Mailing a rental payment after the lease anniversary date does not constitute reasonable diligence, and unanticipated computer errors in the lessee's internal computer accounting system for lease payments do not justify late rental payment. In order to establish that a late rental payment was justified, one must demonstrate that the factors causing the late payment were beyond the lessee's control.

2. Oil and Gas Leases: Reinstatement--Oil and Gas Leases: Termination

   In order to have been eligible for Class II reinstatement of an oil and gas lease, pursuant to the provisions of section 371(a) of the Energy Policy Act, Pub. L. No. 109-58, 119 Stat. 594, 734 (Aug. 8, 2005), the lessee had to file a petition for Class II reinstatement not later than 120 days

172 IBLA 395

following the August 8, 2005, enactment of that Act. A
lessee cannot rely on BLM's failure to notify it of that
deadline because it is deemed to have constructive
knowledge of statutes.

APPEARANCES: William B. Prince, Esq., Wells S. Parker, Esq., Sarah Kerbeshian, Esq., Salt Lake City, Utah, for appellant; Arthur R. Kleven, Esq., Office of the Regional Solicitor, U.S. Department of the Interior, for the Bureau of Land Management.

OPINION BY DEPUTY CHIEF ADMINISTRATIVE JUDGE HARRIS

Western Energy Resources, Inc. (Western Energy), which is a subsidiary of Arch Coal, Inc. (Arch), has appealed from and petitioned for a stay of the June 25, 2007, decision of the Colorado State Office, Bureau of Land Management (BLM), denying its petition for Class I reinstatement of two oil and gas leases, COC-64751 and COC-64752. BLM also held that Western Energy had not filed a petition for Class II reinstatement and that the time for filing such a petition had lapsed.

The case record fails to show that Western Energy qualifies for Class I or Class II reinstatement of its leases. Therefore, in this decision, we affirm BLM's decision and deny the petition for stay as moot.

*Oil and Gas Reinstatement Law*

Section 31(b) of the Mineral Leasing Act (MLA), 30 U.S.C. § 188(b) (2000), provides that, upon the failure of a lessee to pay rental on or before the anniversary date of an oil and gas lease on which there is no well capable of producing oil or gas in paying quantities, the lease terminates automatically by operation of law. *See* 43 C.F.R. § 3108.2-1(a).[1] The Department takes no action to cause such termination; it occurs when a lessee fails to pay rental timely. *Denise M. White*, 120 IBLA 163 (1991); *Henry Y. Yoshino*, 108 IBLA 47, 48 (1989).

However, Federal leases terminated automatically by operation of law for failure to pay rental timely may be reinstated under two separate provisions of law. The Act of May 12, 1970, 84 Stat. 206, 30 U.S.C. § 188(c) (2000), authorizes the Secretary to reinstate a lease only if the rental payment is paid or tendered within 20 days after the due date and the lessee establishes that the failure to timely pay was either justifiable or not due to a lack of reasonable diligence. Reinstatement

---

[1] Unless otherwise noted, the regulations cited are those in the 2006 version of 43 C.F.R.

under this provision, at existing rental and royalty rates, is a Class I reinstatement. *See* 43 C.F.R. § 3108.2-2 (2005).

On January 12, 1983, Congress enacted section 401 of the Federal Oil and Gas Royalty Management Act of 1982 (FOGRMA), codified in relevant part at 30 U.S.C. § 188(d) (2000), which permits reinstatement of leases not eligible under the provisions of the 1970 Act, provided the lessee shows that failure to timely pay was "inadvertent." Reinstatement under section 401 of FOGRMA, at higher rental and royalty rates, is a Class II reinstatement. *See* 43 C.F.R. § 3108.2-3 (2005). However, no lease terminated on or after January 12, 1983, was eligible for reinstatement unless the petition for reinstatement, together with required back rental and royalty accruing from the date of termination, was filed on or before the earlier of 60 days following receipt of Notice of Termination or 15 months after termination of the lease. 43 C.F.R. § 3108.2-3(b) (2005); *see* 30 U.S.C. § 188(d)(2)(B) (2000).

Section 371(b) of the Energy Policy Act of August 8, 2005, amended 30 U.S.C. § 188(d)(2)(A) to provide that for leases terminated on or before August 8, 2005, a proper petition for reinstatement had to be filed on or before the earlier of "(i) 60 days after the lessee receives from the Secretary notice of termination whether by return check or by any other form of actual notice; or (ii) 15 months after the termination of the lease." Pub. L. No. 109-58, 119 Stat. 594, 734 (Aug. 8, 2005); *see* 43 C.F.R. § 3108.2-3(b)(1).[2]

However, notwithstanding that quoted language from section 371(b), section 371(a) of the Energy Policy Act provided that, subject to certain conditions, the Secretary of the Interior could reinstate any oil and gas lease that terminated for failure of a lessee to pay the full amount of rental on or before the anniversary date of the lease, during the period beginning on September 1, 2001, and ending on June 30, 2004, subject to certain conditions. The conditions were that, not later than 120 days following enactment of the Act, the lessee (1) files a petition for reinstatement; (2) complies with the requirements of 30 U.S.C. § 188(e) (2000) regarding payment of rentals and royalties; and (3) certifies that it did not receive a notice of termination by the date that was 13 months before the date of termination. Pub. L. No. 109-58, § 371, 119 Stat. 594, 734 (Aug. 8, 2005).

---

[2] Section 371(b) also amended 30 U.S.C. § 188(d)(2)(B) to state that, if a lease terminates after Aug. 8, 2005, a proper petition for reinstatement has to be filed on or before the earlier of "(i) 60 days after receipt of the notice of termination sent by the Secretary by certified mail to all lessees of record; or (ii) 24 months after the termination of the lease." *See* 43 C.F.R. § 3108.2-3(b)(2).

Following passage of the Energy Policy Act, BLM issued Instruction Memorandum (IM) No. 2006-026, *Supplementation of Section 371(a), Energy Policy Act of 2005*, on October 21, 2005, which provided guidance to BLM State Directors regarding implementation of section 371(a) of the Energy Policy Act. That IM explained that the basis for Congressional action was that the Minerals Management Service (MMS) had experienced problems with its automated computer system between October 2001 and August 2003, which resulted in MMS being unable to identify leases that terminated by operation of law. By the time BLM did receive notice of the leases that had terminated, the time for petitioning for Class II reinstatement was past. The IM directed BLM offices to "[n]otify any former lessee in writing (return receipt) who had an oil and gas lease terminate during the period starting September 1, 2001, and ending June 30, 2004, who had stated, either in writing or verbally, interest in having their lease reinstated" and "[i]nform them of the requirement to submit a petition" addressing and complying with the requirements of the Energy Policy Act. IM at 1. The IM stated that petitions had to be received by close of business on December 6, 2005, and had to be complete when filed, including being accompanied by all monies due in accordance with Class II reinstatement. *Id.*

## Background

BLM issued the two leases in question, effective June 1, 2001, to Western Energy for public lands in Delta and Gunnison Counties, Colorado. Rental payments for the leases in the amount of $1260.00 for COC-64571 and $1956.00 for COC-64572 were due on the June 1 anniversary date of the leases. MMS did not receive rental payments for the two leases on or before June 1, 2002. The rental payments, dated June 6, 2002, were received by MMS on June 11, 2002.[3]

Western Energy tendered the 2003 rental payments before the anniversary date in 2003. MMS accepted and processed the payments. Western Energy asserts that, on or about December 22, 2003, an MMS employee contacted it requesting evidence of the 2002 payment for COC-64571; that Western Energy provided such evidence; and that MMS informed Western Energy that BLM might take issue with the timeliness of the payment.

Western Energy claims that, in anticipation of such a problem, it filed with BLM on February 6, 2004, a petition for Class I reinstatement of both leases. On

---

[3] The lease rental payments in question originated from Arch's headquarters in St. Louis, Missouri, and were processed, on behalf of Western Energy, through Arch's computer accounting system.

172 IBLA 398

February 11, 2004, BLM issued its decision denying Class I reinstatement. BLM also observed that "[y]our situation does not appear to qualify for a Class II reinstatement because fifteen months after termination of the leases has expired on September 1, 2003 in accordance with 43 C.F.R. § 3108.2-3(ii) [2003]." 2004 Decision at 1.

Western Energy appealed that decision to the Board (IBLA 2004-142), arguing that its failure to pay timely was justifiable, thereby qualifying for Class I reinstatement. It also argued that BLM's failure to send a termination notice denied it the opportunity to file for Class II reinstatement, and, therefore, in the alternative, it requested Class II reinstatement, asserting that it satisfied the Class II "inadvertent" standard. 2004 Statement of Reasons (SOR) at 5. On March 24, 2004, the Board granted Western Energy's petition for a stay of BLM's decision.

During the pendency of IBLA 2004-142, Congress enacted the Energy Policy Act of 2005, as discussed above. However, BLM did not notify Western Energy of the opportunity to submit a petition for reinstatement in accordance with section 371(a) of the Energy Policy Act, and the statutory time period set forth in that section lapsed without Western Energy filing a petition for Class II reinstatement under that section.

On September 22, 2006, the Board issued an order setting aside BLM's February 11, 2004, decision, finding that BLM had not addressed certain facts raised by Western Energy on appeal and remanded the case for BLM to consider those facts in a new decision. The Board also recommended that the parties meet to discuss the issue of Class II reinstatement under the Energy Policy Act.

On January 10, 2007, BLM submitted to the Board a Motion for Clarification of the September 22, 2006, order, noting that, following remand, the parties met but were unable to resolve their differences regarding reinstatement of the leases. The Board denied BLM's motion on jurisdictional grounds by order dated February 28, 2007.

On June 25, 2007, BLM issued a new decision denying Class I reinstatement, finding that the late rental payments were made by checks dated June 6, 2002, after the anniversary date of the leases, and that mailing the rental payment after the anniversary date is not reasonable diligence. BLM further held that Class I reinstatement was not justified because the alleged justification for late payment, i.e., unanticipated problems with Arch's computer accounting system, was not beyond the control of Western Energy. BLM also addressed Class II reinstatement, noting that "[t]he lessee never filed a petition for Class II reinstatement during the expanded period allowed by the [Energy Policy] Act (or within the statutory period provided by

IBLA 2007-248

the MLA). The BLM has no authority to grant a Class II petition now." 2007 Decision at 3.

Western Energy filed a timely appeal and petition for a stay of that decision.

*Class I Discussion*

[1] The burden of proof for Class I reinstatement is stated in the regulations at 43 C.F.R. § 3108.2-2(b): "The burden of showing that the failure to pay on or before the anniversary date was justified or not due to lack of reasonable diligence shall be on the lessee." In *Marian L. Kleiner*, 129 IBLA 216, 217 (1994), we stated that "appellant bears the burden of showing by a preponderance of the evidence that failure to pay on or before the anniversary date was either justifiable or not due to a lack of reasonable diligence," citing the regulation.

In this case, Western Energy has failed to carry its burden. First, the rental payments in question were mailed after the lease anniversary date in 2002. Mailing a rental payment after the lease anniversary date does not constitute reasonable diligence. *Marian A. Kleiner*, 129 IBLA at 217; *see* 43 C.F.R. § 3108.2-2(a). Second, Western Energy continues to maintain that its late payment was justified because the unanticipated computer errors, which resulted in a delay in processing and mailing the checks, were beyond its control:

> During the processing of the 2002 rental payments, unanticipated computer errors occurred on two different occasions resulting in a failure of the rental payment checks to be issued and mailed in the anticipated time frame. The first error occurred on or about May 23, 2002, when the computer accounting system apparently did not recognize the MMS to be the recipient of the rental payments. The error was corrected and the rental payments were re-processed. However, at the time when the rental payment checks should have been issued, a second error occurred in the processing of the checks, as indicated on a computer-generated report dated May 30, 2002. Although both computer errors were corrected immediately upon recognition, the cumulative effect of the computer errors was to impact the ability of Western Energy to tender the rental payments before the anniversary date in 2002. [Citations to accompanying exhibit omitted.]

2007 SOR at 6.[4]

In order to establish that a late rental payment was justified, one must demonstrate that the factors causing the late payment were beyond the lessee's control. *Marian A. Kleiner*, 129 IBLA at 217; *Clarence Souser*, 108 IBLA 59, 60 (1989). Western Energy's reliance on unanticipated computer errors in Arch's internal computer accounting system for lease payments do not justify late rental payment. We have stated that the unexplained failure of a computer system or the complexity of a lessee's business affairs are matters within the control of the lessee and do not justify a late rental payment. *Clarence Souser*, 108 IBLA at 60; *Melbourne Concept Profit Sharing Trust*, 46 IBLA 87, 90 (1980); *see Hydra-Co Enterprises, Inc.*, 102 IBLA 46, 48 (1988).

BLM properly denied Class I reinstatement of the leases.

*Class II Discussion*

[2] Western Energy asserts that it is entitled to Class II reinstatement because it made efforts to tender payments on or before the anniversary date and its failure to pay on or before the anniversary date was inadvertent and, therefore, qualifying for Class II reinstatement. It argues that the delay by MMS and the Colorado State Office in addressing the 2002 rental payment is "nothing more than an inexcusable lack of diligence in maintaining government records and a negligent administration of the leasing program."[5] 2007 SOR at 10. Western Energy asserts that it was entitled to

---

[4] This is the same justification presented by Western Energy in IBLA 2004-142, which we indicated was deficient in our Sept. 22, 2006, remand order in that case. No new facts are offered in this appeal.

[5] Western Energy asserts that "[t]he Mineral Leasing Act was never intended to automatically terminate leases as a result of government errors," citing H.R. Rep. No. 91-1005, *reprinted in* 1970 U.S.C.C.A.N. 3002, 3004. 2007 SOR at 11. The language cited by Western Energy relates to a different provision of the 1970 legislation. While that legislation provided limited authority for the Secretary of the Interior to permit reinstatement of terminated leases, it also provided that in certain circumstances a lease would not automatically terminate, if the rental payment due under a lease were paid on or before its anniversary date, but either (1) the rental payment was deficient and, in accordance with regulations to be promulgated by the Secretary, the deficiency was determined to be nominal, or (2) payment was based on an erroneous acreage figure provided by BLM resulting in a deficiency.

(continued...)

172 IBLA 401

notice from BLM of the opportunity to reinstate under the Energy Policy Act. It contends that, while every other BLM State Office contacted by Western Energy engaged in some sort of notice process for lessees, the Colorado State Office did not comply with the IM and took no action to notify Western Energy or any similarly situated lessee about the opportunity for lease reinstatement. In Western Energy's opinion, the length (over 500 pages) and complexity of the Energy Policy Act coupled with the short time period for lessees to act (120 days) rendered the reinstatement relief meaningless absent some form of notice by BLM to applicable lessees.

Section 371(a) of the Energy Policy Act represents Congressional recognition that certain Federal oil and gas lessees were prejudiced by the fact that MMS, and consequently BLM, could not, due to MMS' malfunctioning computer system, identify terminated oil and gas leases, and, in that section, it fashioned a remedy for those lessees. It expressly provided that such a lessee would have 120 days after the enactment of the Energy Policy Act within which to file a petition for reinstatement. However, it made no provision for notification of affected lessees. Instead, BLM established a policy regarding notification, which the Colorado State Office did not follow.

The question presented is what should be the result of the failure of the Colorado State Office to adhere to that policy. While the failure of the Colorado State Office to follow the directions of the IM is inexplicable, Western Energy cannot at this time be granted Class II reinstatement of its leases because of that failure.[6] While Western Energy claims lack of actual knowledge of the reinstatement provision of the Energy Policy Act, we must assume for purposes of deciding this case that Western Energy had constructive knowledge of the provision and, despite that knowledge, failed to comply with it. The reason is that everyone is deemed to have constructive knowledge of statutes. *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 384-85 (1947); *Lester W. Pullen*, 131 IBLA 271, 273 (1994); *John Plutt, Jr.*, 53 IBLA 313, 318 (1981) (Administrative Judge James L. Burski concurring). Therefore, BLM's failure to notify Western Energy of the opportunity provided in the

---

[5] (...continued)
30 U.S.C. § 188(b) (2000); *see* 43 C.F.R. § 3108.2-1(b). Neither situation pertains here. In this case, the leases terminated by operation of law when Western Energy failed to pay the rental in 2002 on or before the anniversary date. Western Energy's failure to make timely payment was not a result of a Government error.

[6] BLM does not deny that the Colorado State Office had a duty to comply with the IM and that it failed in that duty. *See* Opposition to Stay at 16.

172 IBLA 402

IBLA 2007-248

Energy Policy Act for filing a petition for reinstatement, while regrettable, cannot support granting Class II reinstatement.

Western Energy argues that it was entitled to a Notice of Termination of its leases, and that the failure of BLM to send Western Energy such a notice is a clear violation of the regulations.

While the regulations clearly contemplated the issuance of a Notice of Termination by BLM in order to trigger the 60-day period for filing a petition for reinstatement (*see* 43 C.F.R. §§ 3108.2-2(a)(3)(2005) (Class I) and 3108.2-3(b)(1)(i) (2005) (Class II)), as BLM explained in the IM, "[o]nce BLM received notice from MMS of those leases with late or nonpayment of rental, the time within which the lessee could petition for Class II reinstatement was over."[7] IM at 2. Western Energy was not prejudiced by the failure of BLM to issue such a Notice because, despite the lack thereof, Western Energy filed a timely petition for Class I reinstatement, which was adjudicated by BLM, and, at the time BLM learned that the leases in question had terminated, no Class II petition could have been entertained by BLM.

Western Energy asserts that the Board should engage in a balancing of equities in this case because both it and the Colorado State Office made mistakes. In support of that argument, appellant cites the cases of *Mary A. Barnett*, 53 IBLA 328 (1981) and *Richard L. Rosenthal*, 45 IBLA 146 (1980).[8] Those cases, however, do not support a different result in this case. Each of those cases involved situations in which, following automatic lease termination, the lessee demonstrated that its actions

---

[7] The regulations required the filing of a Class II petition for reinstatement on or before the earlier of 60 days after receipt of the Notice of Termination or 15 months after termination of the lease. 43 C.F.R. § 3108.2-3(b)(1) (2005). At the time BLM learned of the termination of the leases, more than 15 months had passed since termination of the leases.

[8] In the Board's Feb. 28, 2007, Order, at page 2, we stated that, if BLM issued another decision, it should discuss "the parties' relative contributions" to the lease termination, citing *Barnett* and *Rosenthal*. In its decision, BLM cited those cases and stated that "[n]o action by BLM contributed to the lessee's failure to timely pay rentals." Decision at 3-4. It added that the fact that it "did not send a notice of lease termination did not affect the lessee's ability to petition for Class I reinstatement." Decision at 4.

172 IBLA 403

IBLA 2007-248

in transmitting rental payments prior to the anniversary date of the lease satisfied the reasonable diligence standard for Class I reinstatement.[9]

In *Barnett*, the lease terminated because BLM did not receive the rental until after the lease anniversary date. However, the payment was received within 20 days of the lease anniversary date, and appellant produced evidence showing that her lease payment had been transmitted sufficiently in advance of the due date to constitute reasonable diligence.[10] The Board held that the lessee provided "sufficient evidence to demonstrate that the late payment was not due to a lack of reasonable diligence on her part," despite evidence that the payment had been directed to an incorrect BLM address.[11] 53 IBLA at 330. In this case, Western Energy did not mail its rental payments until after the anniversary date. *Barnett* is not applicable to this case.

In *Rosenthal*, the lessee incorrectly mailed his lease rental payment to the BLM Colorado State Office, rather than the BLM Montana State Office. The Colorado State Office received the payment 14 days prior to the lease anniversary date, but did not return it to the lessee. Instead, more than 2 weeks later it transmitted the check to the Montana State Office, which received it 5 days after the lease anniversary date. The Montana State Office declared the lease terminated by operation of law and subsequently denied the lessee's petition for reinstatement. The Board reversed BLM's decision. Administrative Judge Burski, the author of *Rosenthal*, discussed the rationale for *Rosenthal* in his concurrence in *Barnett*, explaining therein at 53 IBLA 331:

> The animating rationale of that decision was that the Department had an affirmative obligation to act in a timely manner and that, where an initial delay was compounded by actions of the Department, an oil and

---

[9] Both of those cases predate the advent of Class II reinstatement.

[10] That evidence included a cancelled check showing that deposit of the rental check by BLM "precedes BLM's stated receipt of the rental by 5 days and is further indication of the likelihood of an earlier filing." 53 IBLA at 330.

[11] Administrative Judge Burski concurred in reversing BLM's decision in *Barnett*, not on the basis that appellant had shown reasonable diligence, but because of "critical inconsistencies in the State Office records." 53 IBLA at 331. Citing the unexplained discrepancy between the date of check deposit and BLM's stated receipt of the check and BLM's failure to retain the envelope containing the check in order to verify the date of postmarking, he stated that he "would hold that the payment was timely received and thus the lease would not have terminated." *Id.*

172 IBLA 404

gas lessee was not chargeable with the additional delay generated by the Department. *This principle, however, obviously only applies where the payment is timely received in the Department.* [Emphasis added.]

In the present case, the payment was not timely received in the Department. Western Energy failed to submit its rental payments prior to the lease anniversary date. *Rosenthal* has no bearing on the outcome of the present case.

Western Energy has never filed a Class II petition for reinstatement of the leases in question. Even if its Class I petition could be considered to also be a Class II petition, it was not accompanied by any back rental. This Board has held on numerous occasions that the failure to submit back rentals at the increased rate properly results in denial of Class II reinstatement. *William F. Corkran*, 114 IBLA 76, 80-81 (1990); *Monica V. Rowland*, 90 IBLA 349, 352 (1986). In addition, while Western Energy requested consideration for Class II reinstatement when it filed its SOR in IBLA 2004-142, that filing may not be considered a petition for Class II reinstatement for the same reason.

In the absence of a timely filed petition for reinstatement of its two leases filed with BLM within 120 days of August 8, 2005, which meets the conditions of section 371(a) of the Energy Policy Act, neither BLM nor this Board has any authority to grant a Class II reinstatement of Western Energy's leases.

Accordingly, pursuant to the authority delegated to the Board of Land Appeals by the Secretary of the Interior, 43 C.F.R. § 4.1, the decision appealed from is affirmed. Appellant's petition for stay is denied as moot.

　　　　　　　　　　　　　　　　　　　／s／ Bruce R. Harris
　　　　　　　　　　　　　　　　　　　Bruce R. Harris
　　　　　　　　　　　　　　　　　　　Deputy Chief Administrative Judge

I concur:

／s／ H. Barry Holt
H. Barry Holt
Chief Administrative Judge